1. A petition for a money rule by a client against an attorney at law is amendable.
2. The court did not err in overruling the demurrers to the original petition for the rule, as finally amended by the third and last amendment.
 DECIDED NOVEMBER 23, 1949. REHEARING DENIED DECEMBER 12, 1949.
William Richardson, as a client, brought a money rule in the Fulton Superior Court against his attorney G. Seals Aiken. The motion for a rule, quoted in toto, was as follows: "1. That the said G. Seals Aiken is an attorney at law, practicing in this court, and resides in said State and county. 2. That said Aiken has in his hands the sum of $2283.33, which he should account for and pay over to movant, but which after demand he fails to pay to movant. 3. Movant shows that on May 9th, 1947, his wife, while driving movant's automobile, collided with an automobile driven by one W. E. Coker at St. Charles Avenue and Barnett Street, in the City of Atlanta, she being severely injured and movant's car wrecked. 4. Thereafter there was filed in this court suit No. A-554, on behalf of movant against said Coker and West View Corporation, said suit being filed by said Aiken as attorney for movant. 5. Although movant had not *Page 592 
authorized the filing of said suit, nevertheless on learning of it, he did acquiesce in its having been filed and did acquiesce in said Aiken's offer to represent movant for a fee to Aiken of one-third of the amount which might be received in settlement of movant's claim against Coker and West View Corporation. 6. After said case had been pending for nearly two years, movant insisted in writing that Aiken seek to effect a settlement with the attorney for the insurance company defending said suit. 7. Within a few days thereafter said Aiken presented to movant a release for him to sign releasing Coker and West View Corporation from movant's claims against them. 8. The consideration to movant, recited in said release, was $3425. 9. Movant signed said release and delivered it to said Aiken. 10. As movant is informed and believes and alleges the fact to be, a draft on said insurance company was delivered to said Aiken for the sum of $3425 payable jointly to movant and to said Aiken as an attorney, which draft Aiken collected. 11. Upon said insurance draft there was written the indorsement, "William Richardson," as movant is informed and believes. 12. The indorsement, "William Richardson," on said draft was not written thereon by movant, nor authorized by him, and movant has never seen said draft. 13. Movant charges that the indorsement, "William Richardson," which purported to be movant's signature, was written thereon by the defendant Aiken. 14. Approximately one week after said Aiken had received the insurance draft for $3425, movant made a written request by registered mail to Aiken for the sum so collected, less Aiken's fee as an attorney at law of one-third thereof. Aiken received said registered letter personally. 15. A copy of said letter is hereto attached, marked `Exhibit A', and made fully a part hereof. 16. That following said demand, Aiken sent to movant his check, not for two-thirds of said $3425, but for less than half of said sum, namely, the sum of $1591.33, said Aiken retaining the sum of $1833.67. 17. A photostatic copy of said check for $1591.33 is hereto attached, marked `Exhibit B', and made fully a part of this motion. 18. Said Aiken gave no explanation for his having retained more than half of the $3425, so collected by him, the said Aiken, but wrote to movant a letter enclosing said check, as follows: `Enclosed herewith you will *Page 593 
find my check for $1591.33 in full payment and satisfaction of the amount due you out of the settlement of your case and all your claims against W. E. Coker and West View Corporation.' 19. Said check was received by movant on Saturday, May 21st, 1949, and was on Monday, May 23rd, 1949, returned to said Aiken. 20. Said check was returned to said Aiken accompanied by a further demand for payment of movant's two-thirds of said sum of $3425, which demand in writing was delivered to Aiken in person by movant's agent and attorney, Madison Richardson, as movant is informed and believes. 21. A copy of said written demand is hereto attached marked `Exhibit C', and made fully a part hereof. 22. That no further communication has been had from said Aiken, and no payment of any kind has been made or tendered to him, except as above set forth." (Movant prays customary prayers for relief sought).
Exhibit A to the motion was as follows: "38 Peachtree Circle, N.E., Atlanta, Ga. May 19th, 1949. Mr. G. Seals Aiken, 1105-6 First National Bank Bldg., Atlanta, Ga. My dear Sir: About a week ago I handed to you signed release for $800 and $3425 in settlement of the claims of Mrs. Richardson and myself against Mr. Coker. I suppose you got the money from the insurance company immediately, but we have not received from you our two-thirds up to this time. Last October you told me that you had expenses of $467 in connection with these cases, and you had me to sign an agreement that, if you could settle for $4550, the amount of the two judgments, you would be reimbursed for the expenses amounting to $467. While the settlement is less than $4550, I do not want you to lose any out of pocket expenses which are properly chargeable to Mr. Richardson or to me. It will be satisfactory to me for you to deduct from my two-thirds of $3425 any out of pocket expense you paid which is properly chargeable to either of us, provided you will give me an itemized statement showing each such item, the amount paid, the person to whom paid, and the purpose for which paid. Repeatedly you have mentioned expenses you have paid and I have asked you for an itemized statement, but have never gotten it from you. The amounts we get are much smaller than the amounts you told us positively you could get for us, *Page 594 
and I am disappointed in the way in which the case has been handled. However, both of us want to get this thing over with and get the money due us. Please let us have our checks right away. Yours very truly, (Signed) Wm. Richardson." Exhibit. B was a copy of the check from G. Seals Aiken to William Richardson mentioned in the motion for a rule. Exhibit C to the motion was as follows: "Atlanta, Ga., May 23, 1949. Mr. G. Seals Aiken, Attorney at Law, First National Bank Bldg., Atlanta, Georgia. Dear Sir: On or about May 13th, 1949, there was paid to you as attorney at law representing me, in settlement of claim set forth in suit No. A-554, William Richardson vs. Coker et al, in Fulton Superior Court, the sum of $3425. Of this amount, you are entitled to a fee of one-third and I am entitled to the balance amounting to $2283.33. On May 19th, I received by mail the attached check by you to my order in the sum of $1591.33, tendered in full payment. This amount is wholly unacceptable, and your check is herewith returned. You are hereby notified that in default of payment to me of said sum of $2283.33, I shall claim the same with interest thereon at the rate of 20 percent, and I shall proceed against you in the manner provided by law. You are notified and required to make payment of said sum of $2283.33 to my attorney and agent, Madison Richardson, 1516 First National Bank Building, Atlanta, Georgia. Yours very truly, (Signed) William Richardson."
This original motion was filed on May 27, 1949. On June 6, 1949, movant filed the following amendment to his original motion: "23. The oral agreement that the defendant should be paid as his attorney's fee one-third of the recovery was put in writing by him in a letter written to movant on October 13, 1948, after the three trials had in the cases of movant and his wife were completed. A copy of said letter is hereto attached, marked `Exhibit D' and made fully a part hereof. 24. At the same time defendant presented to movant an agreement to be signed by movant, agreeing to the fee arrangement proposed in defendant's letter. Movant did sign the original and he was furnished with a copy of the agreement so signed by movant. A copy of the agreement was handed to movant by defendant and the same is hereto attached by a copy thereof, marked `Exhibit *Page 595 
D', and made fully a part hereof. 25. That in May, 1949, defendant received from the insurance company a draft in the sum of $800 in settlement of Mrs. William Richardson's claim against Coker et al; that defendant sent to her his check for $533.33, having deducted from the $800 one-third thereof as defendant's attorney's fee."
Exhibit D attached thereto was as follows: "October 13, 1948. Mr. William Richardson, 38 Peachtree Circle, N.E., Atlanta, Georgia. In re: Mrs. William (Helen Camp) Richardson vs. W. E. Coker and West View Corp. A-308; William Richardson vs. W. E. Coker and West View Corp. Dear Bill: Confirming our conversation in person today at my office, please be advised as follows: As you know we have a verdict for $800 in favor of Mrs. Richardson. I filed a motion for new trial, had the record written out by the court reporter, paid for it, then had that record put in the form of a brief of evidence and paid for it, then prepared and had written out and approved by the court a detailed amended motion for new trial. I then prepared and had written out and submitted to the court a written brief and argument in behalf of the motion for new trial. This was overruled by the trial judge, the father of one of the opposing counsel, as you know, I then prepared and had written out a bill of exceptions and amended bill of exceptions carrying this case to the Court of Appeals. Since that time I have prepared and had written out a brief and argument for the Court of Appeals in behalf of appeal. I learned today upon calling the Clerk of the Court of Appeals, as I stated to you, that the case has been set for argument in that court in the State Capitol for November 1st, at 10 a. m. I also expect to appear in person on that date and make a verbal argument in behalf of the appeal and will be glad for you to be present. You also know that I secured a verdict for you from the jury in your case last night in the amount of $3750. As I told you today, the lawyer for the defendants stated to me in substance this morning that he could get his clients to pay $4000 in settlement of the entire litigation. He did not mention court costs. I recommend that this proposition be not accepted. I understood that you agreed with me that it would not be wise to accept such a proposition of settlement, as it would be reducing the two *Page 596 
verdicts $550. If you want to accept the $4000 proposition, I will agree to charge only one-third of said amount as my total fee, although I appeared in Police Court many times and appeared in three trials in Fulton Superior Court, and the customary fee for such legal services in this community would be much more than one-third under the circumstances. I would then deduct only $467 on the expenses I have incurred as attorney for you and Helen. This would not cover the expenses I have actually incurred. They would be at least $750 in addition to the ordinary professional expenses required in carrying on this litigation over a period of 17 months. This would leave a net amount of $2200 out of this settlement to you and Helen. Of course, this proposition on my part would be conditioned also upon the payment by the defendants of the court costs in the two cases. He did not mention court costs to me this morning, but I could not afford to pay in addition the court costs. I might be able to get him to go as high as $4550 in settlement of said cases at this time if you do not want to settle for $4000. If you don't want to accept the $4000 proposition but do want to accept the proposition of $4550, if secured, I would still charge a fee of only one-third and deduct only $467 on expenses incurred by me, leaving a net in such event to you and Helen of $2566. This too would be conditioned upon payment by the defendant of the court costs. I believe I can do better than either of the above-stated propositions and do not recommend either one. I feel very strongly that I can obtain a reversal in the Court of Appeals in Helen's case. In such event, I believe with her confidence, co-operation, and support, that I could either obtain a settlement or a verdict for several times the amount of the verdict of $800 now standing in her case. I am merely presenting this for your consideration and decision in view of your request for information as to expenses, etc., and the net amount you and Helen might expect to receive in the premises. You can indicate below your decision. Whatever you authorize me to do, I will endeavor to make a better settlement and to obtain just as much money as possible without further litigation. In the event I am able to obtain any more money than that you agree to accept, with your approval I agree to divide that surplus between you and myself equally. Very truly yours, G. *Page 597 
Seals Aiken." Exhibit E attached thereto was as follows: "October 13, 1948. Mr. G. Seals Aiken, Attorney at Law, 1106 First National Bank Bldg., Atlanta, Georgia. Dear Sir: You are hereby authorized to accept settlement of $4550 and to disburse the funds resulting therefrom in accordance with the foregoing letter. It is understood and agreed that, in the event you are able to realize any settlement in sum of money over and above the amount herein agreed to be accepted by me on my own behalf as well as that of my wife, that you and I are to divide said surplus equally between us."
The amendment was allowed subject to objection and demurrer. On June 7, 1949, to the original motion G. Seals Aiken demurred generally: because the motion did not set out a cause of action; because the motion on its face showed that the proceeding constituted malicious abuse of legal process; because there were no facts or principles of law set forth in said motion which would warrant the action sought in the prayer of said motion; because the motion consisted of strained conclusions and arguments without any allegations of fact or principles of law to support them. Aiken demurred specially to paragraph 5 of the motion, because it did not set forth the terms and conditions of the contract in question or what the respondent below did for the movant; specially to paragraphs 10, 11, 12, and 13 because said allegations were irrelevant and immaterial; specially to paragraph 18, because the movant did not attempt to set forth the entire contract of employment or the expenses, which the movant was bound to know about; specially to paragraph 20, because it did not show any basis in law or justice for the making of such a demand, because the allegation therein, "Movant's two-thirds of said sum of $3425," was a conclusion of the pleader without any allegation of fact or principles of law to support it, and because it did not set forth the terms and conditions of the contract or the facts and circumstances from which such a conclusion could be reached. The respondent below further demurred to paragraph 21, because it was irrelevant and immaterial; and to paragraph 22, because it was irrelevant and immaterial, and because no reason was shown in law or equity why the respondent should have further communicated with the movant or made any further effort to pay him money. *Page 598 
On June 21, 1949, the respondent below renewed his general and special demurrers to the motion as amended the first time, his additional grounds of demurrer, and demurrers to the first amendment. The following grounds were added to his general demurrer: because the original motion and amendment were in direct conflict with each other, and showed on their face that the movant was not entitled to a rule; and that the said motion and amendment thereto constituted a malicious abuse of legal process; because the original motion filed by the movant was in direct conflict with the exhibits attached thereto; because the motion demanded that no expenses whatever be deducted, and yet in Exhibit A, attached thereto, the movant admitted that the respondent had the right to deduct any out of pocket expenses which were properly chargeable to Mrs. Richardson or to the movant; because said motion as amended did not show or set forth what the contract was with the respondent under which the final settlement was made.
The amendment was demurred to generally and specially as follows: upon each and every ground urged as to the original motion, and upon each and every ground urged as to the motion as amended; because Exhibit D attached to the movant's amendment showed on its face that it was an offer by the respondent to compromise with the movant for a lesser amount than that due respondent; it was conditioned upon settlement pursuant thereto, at that time, without further litigation, and without additional expense to the respondent; because said amendment did not show how, when, or where, or in what particular the said Exhibits D and E were to control a different settlement; because, even if Exhibits D and E were to control the settlement obtained in May, 1949, the respondent would have the legal right, not only to deduct the $467 on expenses agreed to in said exhibits by the movant, but also all additional expenses from October 13, 1948, to the final settlement in May, 1949; because the amendment changed the whole theory and basis of the movant's claimed cause of action, and completely abandoned the position taken by the movant in his original motion upon which the rule was based, and without striking any part of the original motion or connecting it up in any way with the amendment and the exhibits attached thereto, that the original motion and the *Page 599 
amendment constituted misjoinder, multifariousness, and were ambiguous, duplicitous, confusing, incomplete, nonsensical and meaningless; because the amendment did not set forth what expenses were advanced by the respondent from the time of signing Exhibits D and E in October, 1948, to the time of settling the cases of the movant and of his wife and remittances by the respondent to them in May, 1949.
The respondent further demurred generally to the motion as amended upon the following grounds: because the motion as amended showed that the respondent advanced over $750 in expenses to October, 1948; that the cases of the movant and his wife were not settled pursuant to said compromise agreement set forth in Exhibits D and E attached to the movant's amendment, and that additional "out of pocket" expenses were advanced by the respondent from October, 1948, to May, 1949, when the cases were settled and remittances were sent to the movant and his wife; because the original motion and the amendment to the motion both showed, each separately showed, and the motion as amended showed, that the proceeding brought against the respondent by the movant in the matter was not intended or authorized by the law to be brought in such a case, even if the movant had shown that the respondent was indebted to him; because there was no provision in law for such a proceeding as that brought against the respondent by the movant, under the facts and circumstances alleged by the movant, but that, on the contrary, such a proceeding, under the facts and circumstances alleged by the movant and when construed most favorably to him, was prohibited and constituted a base, false, and malicious attack upon an able, honorable, reputable, diligent and successful lawyer and officer of the court, and also constituted a malicious abuse of legal process.
On June 23, 1949, the following second amendment to the motion was allowed, subject to objection or demurrer: "1. That in 1947 and 1948 defendant presented to movant or to movant's wife various items of expense in connection with their suits against Coker, et al., which items of expense were promptly paid. 2. That movant and his wife requested defendant always to present promptly any item of expense that might be incurred, as they desired to pay such items currently. 3. That, when *Page 600 
in October 1948, defendant handed to movant a letter in which reference was made to movant's agreeing to pay expenses of $467, defendant assured movant that he (defendant) had actually paid out such expenses of $467 in connection with their cases, and that such expenses were proper expenses for movant to pay. The assurance by defendant, movant now charges was in fact untrue. 4. Movant then and there requested and repeatedly thereafter requested from defendant a detailed statement as to what the expenses referred to by defendant were. Nevertheless, defendant then failed and, although promising movant to furnish to him detailed information, defendant has ever since failed and refused to disclose to movant the items comprising defendant's claim of expenses advanced by him. 5. Defendant occupied toward movant a confidential relation and was bound to disclose to him what items of expense had been or were being incurred for which movant or movant's wife might become chargeable. 6. Movant shows that, although defendant has concealed from him what the alleged expenses advanced represent, it is possible that there may be a small amount of $50 or $100 chargeable to him or to his wife (which, if true, defendant has concealed from movant), but upon information and belief movant charges that defendant has not advanced expenses amounting to $692 chargeable to him or to his wife, as claimed by defendant, and the allegation of defendant that he has advanced such sum of $692 is untrue. 7. That not only did defendant refuse prior to the bringing of this proceeding to disclose to movant the items comprising said alleged expenses advanced, but in his original answer and in his amended answer defendant has failed and refused to disclose the items of alleged expenses advanced by defendant. 8. That defendant is refusing to disclose the items of alleged expenses advanced, so deducted by him from money coming into his hands for the account of movant, with the fraudulent purpose of concealing from movant and from the court the items, if any, comprising the $692 withheld by defendant. 9. Defendant has refused and now refuses to disclose in what right, if any, he is withholding said sum of $692; and in so refusing defendant has acted and is now acting in bad faith."
On June 27, 1949 respondent below filed his objections to the *Page 601 
allowance of such second amendment and his demurrers to the motion as amended the first and second times and to the second amendment. Because the third amendment of the movant's, which will be hereinafter set out, strikes the movant's first and second amendments, the objections and demurrers to the second amendment will not be set forth.
On June 27, 1949, and during the May-June term of Fulton Superior Court, the trial judge entered an order overruling the demurrers to the original motion and to the motion as amended the first time. That part of the judge's order overruling the motion as first amended includes the statement of the trial judge: "By an amendment the movant alleged that the oral agreement respecting the fee was put in writing by a letter of the attorney to him dated October 13, 1948 and by an agreement thereto which movant signed. These two documents are attached to the amendment as exhibits. In these letters it appears that the attorney and client discussed settlement of the suits of movant and his wife for $4000. The attorney stated that, if the offer of this amount was accepted, he, the attorney, would charge a fee of one-third of the total sum and would deduct $467 as expenses (although he stated that this would not cover them, as the expenses `would be at least $750'). The attorney also agreed that, if he was able to get a settlement of $4550, he would still charge a fee of one-third and expenses of $467. To this the client agreed. While this agreement was made October 13, 1948, and the motion alleges the settlement of the cases in May 1949, and the motion as amended shows settlement of movant's case for $3425 and his wife's case for $800, making a total of $4225, it does notappear from the motion that the settlement was not made under that agreement. Movant relies upon it by pleading it as applicable. The amended motion therefore shows a collection by the attorney of a definite sum, an agreed fee of one-third, and a fixed amount of $467 for deductible expenses, leaving a balance due by the attorney of a definitely ascertainable amount which, while less than that claimed in the original motion, is still in excess of the amount of the check sent by the attorney to the client. It is, therefore, my conclusion that the rule in the Felton case is still applicable to the amended motion, and that the motion as *Page 602 
amended (by the first amendment) is sufficient as against the general demurrer. It is, therefore, ordered that the general demurrer to the motion as amended (by the first amendment) be and it is hereby overruled."
On July 12, 1949, and during the July-August term of said court, the respondent below filed a motion to vacate the ruling of the trial court overruling the demurrers to the original motion and the motion as amended the first time, and to substitute in lieu thereof a ruling sustaining general demurrers to the original motion and the motion as first amended. This motion was dismissed by the court on August 9, 1949.
On July 14, 1949, the respondent below filed his exceptions pendente lite to the ruling of the court overruling the respondent's demurrers to the original motion and to the motion as first amended. On August 9, 1949, the movant filed the following third amendment to his original motion: "Comes now the movant in the above-stated case and, with leave of court first obtained, amends his original motion for a money rule by withdrawing and striking the two amendments thereof which have heretofore been allowed and filed, and by amending the original motion by adding thereto the following: 1. Since the filing of the two amendments now withdrawn and stricken, movant has taken the deposition of the defendant and has now obtained knowledge of facts which he did not formerly know. 2. Defendant did, in 1947 and 1948, send to movant or to his wife various bills for fees of court stenographers and for witness fee and for photographs, aggregating the sum of $113, which were promptly paid. 3. Defendant was requested by movant and his wife to forward to them any bills which they ought to pay in connection with their suits, as they desired to pay promptly any proper bills incurred in connection with their suits. Movant and his wife were at all times ready, able, and willing to pay all proper bills so incurred. 4. As a result of the taking of defendant's deposition, movant has now learned that defendant made the following disbursements in the total amount of $93.95 in connection with the suit of movant's wife, to wit: L. C. Algee, Court Reporter, for transcript of testimony and charge of court, $52.00; Mr. William J. Pendergrast, witness fee for expert medical testimony, $25.00; Court of Appeals of Georgia, *Page 603 
court costs, $15.00; certified copy of city ordinance, $1.45; total, $93.95. 5. Regardless of whether the incurring of such items was or was not authorized by movant's wife, in view of her instructions to defendant not to appeal her case, movant is willing to assume liability therefor and consents that defendant may deduct from the $3425 in his hands, his fee for one-third thereof (that is, $1235.62), and also said sum of $93.95. 6. After such deductions, there is left in the defendant's hands the sum of $2189.38, which belongs to movant. 7. Defendant has paid out no sums on behalf of movant or his wife except as set out above, and movant is not indebted to defendant in any sum except as hereinabove set forth, and defendant has no right of any kind to said sum of $2189.38, or to any part of the same. 8. Defendant has, nevertheless, failed and refused to pay over said sum to movant upon demand. 9. By the taking of defendant's deposition, movant has learned and now charges that the representations made by defendant that he has advanced expenses of $467 or $750 or $1800, or any other sum except the $93.95 referred to above, are false and were known by defendant to be false when made, and that defendant made representations for the purpose of misleading movant and inducing him to agree to allow the deduction of said fictitious expenses from the recovery realized on movant's claim."
On August 9, 1949, the respondent below filed his objections to the allowance of movant's third amendment, the objections being substantially as follows: that said amendment sought to introduce a new cause of action; that the amendment sought to introduce new facts entirely variant from those alleged in the original motion; that said amendment sought to introduce facts diametrically opposed to those set forth in the original petition; that the amendment sought to add a cause of action sounding in tort to a cause of action which originated in contract; that the amendment sought to add an amendment for an accounting to a cause of action which originated as a money rule; that the amendment was at variance as to amount with the original sworn petition and with no reasonable explanation, nor any explanation, for such variance; that the movant sought by the amendment to avoid that part of the court's ruling overruling the demurrers to the original motion and the motion as first *Page 604 
amended which was detrimental to the movant's cause. The court overruled the respondent's objection to the third amendment, and on August 9, 1949, the respondent filed his demurrers to the motion as amended the third time, substantially as follows: that the motion as amended the third time set forth no cause of action; that the third amendment consisted of "conclusions, arguments, irrelevant, incompetent and scurrilous matter," without any allegations of fact or principles of law to support them; that the motion as amended the third time showed on its face that it was "ambiguous, contradictory, duplicitious, confusing, irrelevant, incompetent, scurrilous, false, malicious, and filed and prosecuted for the purpose of destroying the good name and reputation of respondent as an able and honorable officer of this court"; that the movant sought by said third amendment to avoid that part of the court's ruling overruling the demurrers to the original motion and the motion as amended the first time which was detrimental to movant's cause. The court overruled such demurrers on August 9, 1949. The respondent below excepts to the rulings above set forth.
1. A rule instituted by a client against an attorney at law is amendable. Felton v. Smith, 52 Ga. App. 436
(183 S.E. 634).
2. It will be noted that the demurrers to the original rule as first amended were overruled. The demurrers to the second amendment were not passed on because the first and second amendments were withdrawn by the third amendment after the demurrer to the petition as first amended was overruled. It seems to us that it is unnecessary to rule specifically and in detail on all of the judgments which have been excepted to. The original petition contained enough to amend by, and the third amendment brought the petition up to the requirements stated to be sufficient in Felton v. Smith, supra. It was there stated: "A petition which alleges the collection of a certain sum, agreement as to the amount of the fee, and retention of and refusal *Page 605 
to pay the difference between the amount of the collection and the sums properly deductible therefrom, was not demurrable as showing a mere controversy over disputed rights and credits"; and the court there held that the petition, as it was sought to be amended, was not subject to demurrer. If the original petition contained enough to amend by, and the last amendment set forth a complete cause of action, it is immaterial what the allegations of the intervening amendments contained, provided they did not so weaken the pleading that it did not thereafter contain enough to amend by, or because of some rule of law which would prevent their being stricken after the court had ruled that they were allowable and proper. We do not think that there was any reason why the first and second amendments could not be withdrawn. The court in its order on the demurrers to the petition and first amendments stated, in its reasoning on the questions, that the plaintiff had agreed to pay the defendant $467 for expenses even if the cases were settled for less than $4550. The defendant contends that this statement became the law of the case, and that the plaintiff invoked the ruling and is estopped to obviate its effect by withdrawing the pleadings showing the agreement to pay $467 for expenses. In the first place, the plaintiff did not invoke such a ruling. All the plaintiff invoked was a ruling on the demurrer. In the second place, the statement by the judge was not a judgment but a mere statement of a reason for a conclusion which he had reached as to a part of the case that did not affect his judgment, and the statement was not binding on the judge nor is it binding on this court. In the third place, the correspondence referred to in the first amendment did not contain an agreement by the plaintiff to pay $467 for expenses at any all events, nor did it contain an admission that the defendant had expended $750 for expenses. The failure of the defendant to correctly interpret this correspondence is, in our opinion, the cause of this most unfortunate litigation. This correspondence shows a statement by the defendant that he had expended $750 for expenses and that he would accept $467 in satisfaction if a settlement was effected. It shows that the plaintiff did not admit or agree that any definite amount had been spent for expenses, but that he agreed to pay $467 to the defendant on account of expenses if the cases were *Page 606 
settled for $4550. The parties were at that time negotiating on a $4000 settlement. The almost inescapable import of the plaintiff's letter was that he would agree to the payment of $467 for expenses, whether he had a statement of them or not and whether they were actually due or not, provided the increase in settlement was sufficient to cover or more than cover the amount of expenses agreed to be paid. In the correspondence there was no effort to come to any agreement or understanding as to what amount had been spent for expenses by the defendant or what amount the plaintiff would pay if the cases were settled for less than $4550. It therefore follows that the first and second amendments were properly allowed to be withdrawn. They are not now a part of the pleadings and cannot be considered except in the manner above shown. If there is anything in them which is damaging to the plaintiff, it cannot now be considered in a ruling on the demurrers to the petition as finally amended. The court properly refused at a succeeding term to entertain a motion to vacate the ruling on the demurrers to the petition as first amended at a preceding term; but the question raised is, of course, the same as we have already mentioned, to wit, whether the demurrer to the petition as first amended was properly overruled. The defendant cannot complain because the plaintiff in the third amendment wrote off a small sum from his demand, especially when the amendment shows that he was not required to do so. Without ruling on all of the exceptions made, we hold that the only rulings necessary are: that the petition as first amended contained enough to amend by; that the ruling of the court on the first amendment did not preclude its withdrawal; and that the petition as amended the third time was not subject to the demurrers urged.
The court did not err in overruling the demurrers and objections to the petition as finally amended.
Judgment affirmed. Sutton, C. J., and Worrill, J., concur.